JUDGE NATHAN

**14 CV** **8185**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X    Case No.

LISA MARQUEZ,

**COMPLAINT**

Plaintiff,

-against-

THE CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, and LIEUTENANT RUBEN CASTRO,
*Individually*,

**PLAINTIFF DEMANDS**
**A TRIAL BY JURY**

**RECEIVED**
OCT 1 4 2014
U.S.D.C. S.D. N.Y.
CASHIERS

Defendants.

-------------------------------------------------------------------X

Plaintiff, LISA MARQUEZ, by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at

Law, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1.    Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42

U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of

1991, Pub. L. No. 102-166 ("Title VII") and the New York City Human Rights Law, New

York City Administrative Code § 8-502(a), *et. seq.* ("NYCHRL"), and seeks damages to

redress the injuries Plaintiff has suffered as a result of being **Sexually Harassed,**

**Discriminated Against due to Gender**, **Retaliated Against**, severely humiliated,

mentally anguished, and emotionally and physically distressed **by her employer.**

## JURISDICTION AND VENUE

2.    Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §§

1331 and 1343.

3.    The Court has supplemental jurisdiction over the claims of Plaintiff brought under state

law pursuant to 28 U.S.C. §1367.

4.   Venue is proper in this district pursuant to 28 U.S.C. §1391(b), as a substantial part of the

events or omissions giving rise to the claim occurred within the Southern District of New

York.

## PROCEDURAL PREREQUISITES

5.   Plaintiff filed charges of discrimination upon which this Complaint is based with the

Equal Employment Opportunities Commission ("EEOC") on February 28, 2013.

6.   It has been more than 180 days since the date Plaintiff filed the above charge.

7.   To date, Plaintiff has yet to receive a Right to Sue letter from the EEOC with respect to

the herein charge of discrimination.

8.   As such, the prerequisite under Title VII requiring Plaintiff to obtain a Right to Sue letter

from the EEOC should thus be waived due to the EEOC's inaction in this matter.

## PARTIES

9.   That at all times relevant hereto, Plaintiff LISA MARQUEZ ("MARQUEZ") is a resident

of the State of New York and County of New York.

10.  At all times material, THE CITY OF NEW YORK ("CITY"), the defendant herein, was

and is a municipal corporation organized and existing as such under and by the virtue of

the laws of the State of New York.

11.  At all the times hereinafter mentioned, NEW YORK CITY POLICE DEPARTMENT

("NYPD"), the defendant herein, is a department subdivision of Defendant CITY and is a

municipal entity duly organized and existing under and by the virtue of the laws of the

State of New York.

2

12.  At all times material, Defendant CITY operated, maintained, controlled and supervised Defendant NYPD, as a police department of Defendant CITY.

13.  At all times material, Plaintiff MARQUEZ was an employee of Defendant NYPD and Defendant CITY.

14.  At all times material, Defendant LIEUTENANT RUBEN CASTRO ("CASTRO") was and is a resident of the State of New York.

15.  At all times material, Defendant CASTRO was and is an employee of Defendant NYPD and Defendant CITY, holding the position of "Lieutenant" in Defendant NYPD's 30th Precinct.

16.  At all times material, Defendant CASTRO was Plaintiff MARQUEZ's supervisor and/or held supervisory authority over Plaintiff MARQUEZ.

17.  Defendant NYPD, Defendant CITY, and Defendant CASTRO are herein collectively referred to as "Defendants."

## MATERIAL FACTS

18.  On or about August 30, 1993, Plaintiff MARQUEZ began working for Defendants as a "Police Officer" in Defendant NYPD's Transit District 32, earning approximately $17,000 per year, plus overtime.

19.  At all times relevant hereto, throughout Plaintiff MARQUEZ's tenure, Plaintiff MARQUEZ has been an exemplary employee, has never been disciplined, and has always received compliments for her work performance.

20.  In fact, as a result of Plaintiff MARQUEZ's excellent work performance, in or about July 2002, Plaintiff MARQUEZ was promoted to "Detective" in Defendants' Bronx Warrant Squad and received a pay raise to approximately $60,000 per year, plus overtime.

21.    Plaintiff MARQUEZ also received several other raises in pay, ultimately earning an annual salary of approximately $93,000, plus overtime.

22.    However, since in or about February 2012, Defendants have also consistently and continuously subjected Plaintiff MARQUEZ to **sexual harassment and discrimination solely due to Plaintiff MARQUEZ's gender (female)**, creating an extremely hostile and intimidating work environment.

23.    By way of example, on or about February 7, 2012, while Plaintiff MARQUEZ was sitting at her desk talking about losing some weight, her direct supervisor, Defendant CASTRO, told her not to lose any weight because **"I like you just the way you are... nice and tight."** Even though Plaintiff MARQUEZ immediately asked him to stop using such sexually explicit language, Defendant CASTRO completely ignored Plaintiff MARQUEZ.

24.    On or about February 15, 2012, while inside of Plaintiff MARQUEZ's office, Defendant CASTRO again made a sexual comment to her in front of Detective Gleen Morales and Detective Ferando Santana.  Disgusted and offended, Plaintiff MARQUEZ immediately told him that his comments were inappropriate and asked him to stop.

25.    In or about February 2012, with the door open, and while undressed, showing his chest and half of his leg, Defendant CASTRO would always call Plaintiff MARQUEZ's name from the locker room and just start talking to her as if everything was normal.  Plaintiff MARQUEZ was appalled and frightened by such an action, and as a result, immediately told him, **"Please don't talk to me while you're getting changed."**

26.    Additionally, in or about February 2012, Plaintiff MARQUEZ walked into the office and saw Defendant CASTRO rubbing Irene Gadsden's back and put his hands down her

pants.

27.    As such, in or about February 2012, **Plaintiff MARQUEZ complained to Defendants' Equal Employment Officer** regarding Defendant CASTRO's sexual harassment.

28.    Unfortunately, almost immediately thereafter, also in or about **February 2012, Defendant CASTRO began to retaliate against Plaintiff MARQUEZ by intentionally sabotaging her investigations.**

29.    By way of example, in or about February 2012, while Plaintiff MARQUEZ was interviewing the victim of a robbery, Defendant CASTRO suddenly started to yell at her for the sole purpose of embarrassing her.

30.    In or about February 2012, again while Plaintiff MARQUEZ was attempting to interview a potential robbery suspect, Defendant CASTRO cut Plaintiff MARQUEZ's interrogation short, preventing her from being able to get a written or verbal confession from this individual.  Defendant CASTRO then informed the suspect that he was free to leave and told him, in front of Plaintiff MARQUEZ, that she was wrong for mistreating him.

31.    Plaintiff MARQUEZ spoke to Defendant CASTRO and asked him, "Why are you going out of your way to make sure that I fail with my investigations?"

32.    Plaintiff MARQUEZ then walked away and **called her other supervisor, Peter Holness, to inform him of all of Defendant CASTRO's retaliation.**

33.    In or about February 2012, Defendant CASTRO suddenly told Plaintiff MARQUEZ that she was no longer allowed to work any overtime on any of her investigations.

34.    In or about March 2012, Plaintiff MARQUEZ's union representative, Detective Ervin Urbina, had a meeting with Defendant CASTRO, during which he admitted to the retaliation.

35.    However, Defendant CASTRO nonetheless continued to yell at Plaintiff MARQUEZ and sabotage her work whenever she would talk to victims who had filed a police report.

36.    In or about March 2012, Defendant CASTRO began to give Plaintiff MARQUEZ his assignments, knowing that she did not have the access codes to complete the tasks. However, whenever Plaintiff MARQUEZ would inform Defendant CASTRO of this, he would simply tell her, **"That's your problem. The boss wants it and it's due. Finish it by the end of the night and don't take any overtime."**

37.    On or about March 27, 2012, Plaintiff MARQUEZ had knee surgery and thereafter went out on a medical leave of absence while she recovered.

38.    On or about May 24, 2012, Plaintiff MARQUEZ returned from her medical leave of absence and was placed on desk duty as a reasonable accommodation for her disability.

39.    The following week, in or about late-May 2012, Defendant CASTRO actually told Plaintiff MARQUEZ, **"You're useless to me."**

40.    In or about July 2012, Plaintiff MARQUEZ again witnessed Defendant CASTRO rubbing Irene Gadsen's back and putting his hands down her pants.

41.    In or about July 2012, Defendant CASTRO had the audacity to ask Plaintiff MARQUEZ, **"How long are you going to milk this knee injury?"**

42.    On or about October 22, 2012, just to make her life more difficult, Defendant CASTRO arbitrarily changed Plaintiff MARQUEZ's work hours to the night shift (4:30 pm – 1:00 am).

43.    On or about November 6, 2012, Defendant CASTRO questioned Plaintiff MARQUEZ as to why she had not completed one of his reports, to which Plaintiff MARQUEZ explained that she did not know how to complete it. When Plaintiff MARQUEZ then tried to get up

6

from her chair, Defendant CASTRO told her to **"sit the hell down. I'll tell you when to leave."**

44.   After Plaintiff MARQUEZ exited his office, Defendant CASTRO began to follow her and tell her to "exit the area and never return." Defendant CASTRO then called his supervisor, Captain Geoffrey Hart, and requested that Plaintiff MARQUEZ be suspended without pay.

45.   In or about November 2012, Defendant CASTRO arbitrarily removed Plaintiff MARQUEZ's locker from the lounge area and told her that she was not permitted in the lounge area.

46.   On or about November 9, 2012, again for absolutely no valid reason, Defendant CASTRO told Plaintiff MARQUEZ that she was no longer permitted to eat at her desk and even gave her an assigned time to eat her lunch, even though none of Plaintiff MARQUEZ's co-workers had an assigned lunchtime.

47.   On or about December 6, 2012, **Plaintiff MARQUEZ again spoke to Defendants' Equal Employment Officer** and complained about Defendant CASTRO's continued retaliation.

48.   In or about December 2012, the day before Defendants' holiday party, Defendant CASTRO told Plaintiff MARQUEZ that she could not change her work hours and thus could not attend the party. As a result, Plaintiff MARQUEZ was the only employee in the office that was unable to attend the holiday party.

49.   In or about December 2012, Defendant CASTRO arbitrarily told Plaintiff MARQUEZ that she has to take down her hanging plants, again solely for the purpose of harassing Plaintiff MARQUEZ.

50.  This pattern of sexual harassment and retaliation is ongoing and continuous.

51.  Plaintiff MARQUEZ has been humiliated by the actions of Defendants and has begun to suffer from severe anxiety and depression as a result of Defendants' sexual harassment and retaliation.

52.  **Plaintiff MARQUEZ feels that any ordinary person in her shoes would feel compelled to resign from her employment.**

53.  Plaintiff MARQUEZ has been unlawfully sexually harassed, discriminated against, humiliated, retaliated against, degraded and belittled, and as a result, suffers loss of rights, emotional distress, loss of income, and earnings.

54.  Plaintiff MARQUEZ's performance has been, upon information and belief, above average during the course of her employment with Defendants.

55.  The above are just some of the acts of sexual harassment, discrimination and retaliation that Plaintiff MARQUEZ has experienced on a regular and continual basis during her tenure with Defendants.

56.  Plaintiff MARQUEZ has been regularly exposed to a sexually hostile and retaliatory work environment by Defendants.

57.  Defendants' hostile actions have created an unlawfully hostile working environment that no reasonable person would tolerate.

58.  Plaintiff MARQUEZ has been retaliated against due to her objection to Defendants' sexually harassing and unlawful conduct.

59.  **Defendants' actions and conduct were and are intentional and intended to harm Plaintiff MARQUEZ.**

60.  Plaintiff MARQUEZ's supervisor, Defendant CASTRO, regularly exposes Plaintiff

MARQUEZ to a sexually hostile and retaliatory work environment.

61.    Defendants **have knowledge and/or acquiesce** in the sexual harassment and retaliation, as Plaintiff MARQUEZ has complained to Defendants' Equal Employment Officer about all the sexual harassment and retaliation she has been forced to endure.

62.    As a result of Defendants' actions, Plaintiff MARQUEZ feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

63.    As a result of Defendants' discriminatory and intolerable treatment of Plaintiff MARQUEZ, she is suffering from severe emotional distress and physical ailments.

64.    As a result of the acts and conduct complained of herein, Plaintiff MARQUEZ has suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.  Plaintiff MARQUEZ has further experienced severe emotional and physical distress.

65.    As a result of the above, Plaintiff MARQUEZ has been damaged in an amount which exceeds the jurisdiction limits of all lower Courts.

66.    Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.  As such, Plaintiff MARQUEZ demands Punitive Damages as against both Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendant)

67.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

68.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e *et seq.*, for relief based upon the unlawful

employment practices of the above-named Defendants.   Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender (sexual harassment).

69.   Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by discriminating against Plaintiff because of her gender (sexual harassment).

### AS A SECOND CAUSE OF ACTION
### FOR RETALIATION UNDER TITLE VII
### (Not Against Individual Defendant)

70.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

71.   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

72.   Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.* by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

73.   Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

74.  New York City Administrative Code §8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

75.  Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her gender (sexual harassment).

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

76.  Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

77.  The New York City Administrative Code §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

78.  Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

79.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

80.    The New York City Administrative Code §8-107(7) provides that it shall be unlawful

discriminatory practice: "For an employer . . . to discriminate against any person because

such person has opposed any practices forbidden under this chapter. . ."

81.    Defendants engaged in an unlawful discriminatory practice in violation of New York City

Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's

opposition to the unlawful employment practices of Plaintiff's employer.

## AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

82.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

83.    New York City Administrative Code §8-107(19) Interference with protected rights. It

shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten

or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in

the exercise or enjoyment of, or on account of his or her having aided or encouraged any

other person in the exercise or enjoyment of, any right granted or protected pursuant to

this section.

84.    Defendants violated the section cited herein as set forth.

## AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

85.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

86.    New York City Administrative Code §8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

    a.    An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b.    An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

        1.    the employee or agent exercised managerial or supervisory responsibility; or

        2.    the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

        3.    the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

    c.    An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise

13

only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

87. Defendants violated the section cited herein as set forth.

## JURY DEMAND

88. Plaintiff requests a jury trial on all issues to be tried.

WHEREFORE, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII and the NYCHRL, in that Defendants have sexually harassed, discriminated against, and retaliated against Plaintiff on the basis of her gender;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

proper to remedy Defendants' unlawful employment practices.


Dated: New York, New York
         October 9, 2014


                                        PHILLIPS & ASSOCIATES,
                                        ATTORNEYS AT LAW, PLLC


                        By:             _____
                                        Alex Umansky (AU7961)
                                        *Attorneys for Plaintiff*
                                        45 Broadway, Suite 620
                                        New York, New York 10006
                                        (212) 248-7431
                                        aumansky@tpglaws.com